THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

PINES BACH LLP,

    Plaintiff,

v.                                                    Case No. 3:22-cv-66-JDP

MICHAEL A. MILLS,

    Defendant.

---

**EXPERT REPORT OF LESTER A. PINES MADE PURSUANT
TO FED. R. Civ. P. 26(a)(2)(B)**

---

This report is submitted in accordance with the Court's Pre-trial Order requiring

that all expert witnesses to provide a written report containing the elements in F. R. Civ.

P. 26(a)(2)(B).

`   **1**. **My relationship with the Plaintiff Pines Bach LLP.**

I am Senior Counsel to the Plaintiff, Pines Bach LLP (hereinafter "Pines Bach").
Until January 1, 2022, I was partner in the firm. I am still associated with and am
an active lawyer in the firm.

**2. Compensation for my expert services.**

As Senior Counsel, I receive compensation from Pines Bach for my work.
However, I will not receive additional compensation for serving as an expert
witness in this matter. I will not financially benefit if Pines Bach is successful in
this case and recovers from the defendant.  Nor will I suffer a financial detriment
if Pines Bach is unsuccessful in this case.

I was not retained by Pines Bach or the counsel representing it in this matter to
serve as a compensated expert witness.

**3.      My qualifications generally.**

I am qualified to provide the expert opinions set forth in this report because:

- I am a highly experienced civil trial attorney with significant knowledge about federal civil procedure, especially pre-trial procedure.

- I was the lead attorney in the case for which the Plaintiff, Pines Bach, is seeking to recover the amount of money plus interest that the Plaintiff, Michael A. Mills (hereinafter "Mills"), owes it for the services the firm provided to him in the case entitled *Bou-Matic, LLC, et al v Michael A. Mills*, Western District of Wisconsin Case No. 19-CV-158 (hereinafter "the Bou-Matic case"), and in which Pines Bach is defending itself against various counterclaims pled by Mills.

- Having practiced for over 47 years in Wisconsin, including in cases involving fee shifting, I am generally familiar with the fees charged by law firms providing representation to clients in civil cases.

- I am also generally familiar with the work product of attorneys in civil trials in this state and know and understand the obligations imposed on Wisconsin attorneys under the Wisconsin Supreme Court's Rules of Professional Conduct.

- Having been a partner in law firms in Wisconsin since 1975 and having actively managed them along with my partners, I am able to determine whether:

    o  the attorneys' fees charged by Pines Bach to Mills were reasonable and consistent with the engagement agreement he entered into with Pines Bach;

    o  the work product of the Pines Bach attorneys who participated in the representation of Mills, including my own, was consistent with their obligation to act with the degree of care, skill, and judgment which reasonably prudent lawyers practicing in Wisconsin would exercise under like or similar circumstances;

    o  the behavior of the Pines Bach attorneys or Pines Bach itself was in any way fraudulent or deceptive;

- o Pines Bach's attorneys, including myself, misrepresented their abilities or competence to induce Mills to retain Pines Bach or to continue having Pines Bach represent him in the Bou-Matic case;

- o Pines Bach's attorneys, including myself, breached any fiduciary duty they may have owed to Mills;

- o Pines Bach's activities in seeking to collect fees pursuant to a signed engagement agreement were consistent with its obligations under the Wisconsin Consumer Act;

- o Pines Bach or anyone acting on its behalf engaged in activities prohibited by Wisconsin Deceptive Trade Practices Act, specifically Wis. Stat. §100.18(1); and,

- o Payment by Mills of the amounts claimed by Pines Bach to be owed for the services provided to him in the defense of the Bou-Matic case would be consistent with the Engagement Agreement entered into between Pines Bach and Mills.

- During the past four years, the only time that I have testified as an expert at trial or by deposition was in the case entitled *MFP Holdings, LLC, v Boardman & Clark, LLP, et al* (Dane County Wisconsin Case No. 17-CV-2528).

- During the past 10 years I have published two articles: *Attorney General Schimel Declares: "I am the State,"* Milwaukee Sheppard Express, December 5, 2017; and, *Relearning the Lessons of Freedom Summer,* Wisconsin Lawyer Magazine, Volume 7, No. 7, July 2014.

4. **My qualifications specifically.**

- I received my B.A. with distinction in history from the University of Wisconsin-Madison in January 1972. I was awarded my J.D. from the University of Wisconsin Law School in December 1974, and in January 1975 I was admitted to practice before the Wisconsin Supreme Court and the United States District Court for the Western District of Wisconsin. Since January 1975, I have engaged in the private practice of law.

- I am a trial lawyer with a general litigation practice. Although my practice is based in Dane County, Wisconsin, over the last 47 years I have

represented clients in and tried civil and criminal cases in many other counties, in the Western District of Wisconsin, and in other federal district courts. During the past 20 years I have occasionally served as local counsel with national law firms that were engaged in litigation in Dane County or the Western District of Wisconsin.

- In 1984, I was a founding partner of the law firm named Cullen Weston & Pines, which later became Cullen Weston Pines & Bach LLP and is now known as Pines Bach. From 1984 to the present, I have focused my practice on civil and criminal cases, labor arbitrations, and administrative proceedings.

- My qualifications and competence as a trial lawyer were thoroughly vetted by Fellows of the American College of Trial Lawyers (ACTL) in 2004, and I was thereafter inducted as a Fellow in 2005. No attorney becomes a Fellow of the ACTL unless he or she has tried numerous jury trials to verdict, and no more than one percent of the total number of lawyers in any state of the United States or a province of Canada may become a Fellow. I am currently the Chair of the Wisconsin State Committee of the ACTL. For several years, I have served on the Federal Rules Committee of the ACTL that meets twice a year to review and determine if the ACTL wishes to comment on proposed changes to the Federal Rules of Civil Procedure.

- From 1994 through 2010, I was an Adjunct Professor at the University of Wisconsin Law School teaching a class entitled "Pre-trial Civil Advocacy" that covered all aspect of a civil trial up to the trial itself. In 2010, I was chosen by the Law School as its "Adjunct Professor of the Year" for my teaching of that course. As the court's docket in this matter shows, all of the activities of the parties took place well before trial, in fact, before Mills even answered the complaint. Consequently, my knowledge of federal pre-trial civil procedure is particularly relevant to my opinions in this case.

- A true and correct copy of my current resume is attached hereto and incorporated herein by reference as Exhibit A.

## 5. My Expert Opinions

I have formed the following opinions to a reasonable professional certainty:

A. The services performed by the attorneys at Pines Bach, including myself, in the defense of the Bou-Matic case were reasonable and necessary.

B.  The services performed by the attorneys at Pines Bach, including myself, met the standard of care that applies to attorneys representing clients in litigation in the State of Wisconsin in that they used the degree of care, skill, and judgment which reasonably prudent lawyers practicing in Wisconsin would exercise under like or similar circumstances.

C.  The Pines Bach attorneys who performed services for Mills in the Bou-Matic case, including myself, complied with the Wisconsin Supreme Court's Rules of Professional Conduct, did not engage in fraudulent behavior or deceptive behavior, and did not abuse any fiduciary duty toward Mills.

D.  The amounts charged by Pines Bach for the services of its attorneys and paralegals rendered to Mills in the Bou-Matic case as shown on the invoices that were sent to Mills by Pines Bach, true and correct copies of which are attached hereto as Exhibit B and incorporated herein by reference, were reasonable and complied with the terms of the Engagement Agreement signed by Mills on April 11, 2019, a true and correct copy of which is attached hereto and incorporated herein by reference as Exhibit C.

E.  No one from Pines Bach who communicated with Mills when attempting to collect the amounts of money owed by Mills to Pines Bach failed to comply any of Pines Bach's obligations under applicable Federal or State laws, regulations, or acts to refrain from abusive debt collection activities.

F.  When attempting to collect the money owed by Mills to Pines Bach, Mills was threatened with legal action by Pines Bach, but Pines Bach had a right to start a legal action as to Mills' debt to it and has engaged in similar actions as to clients who have not paid for services rendered to them by Pines Bach.

G.  There were no communications to the public or to Mills made by Pines Bach or anyone on its behalf that was an advertisement, announcement, statement, or representation that contained any assertion, representation, or statement of fact which was untrue, deceptive, or misleading and, in fact, no communication made to Mills by Pines Bach or on its behalf was a misrepresentation of any kind.

H.  Pines Bach was paid, in part, by Mills for its services to Mills, but was not paid for a substantial part of the services it performed, and Pines Bach in no way has received a monetary benefit from Mills to which it was not entitled.

6.    **The facts that support my expert opinions.**

A.    **The sources from which I determined the facts on which my opinions are based:**

- the docket entries in *Bou-Matic, LLC, et al v Michael A. Mills*, Western District of Wisconsin, Case No. 19-CV-158, including the filings that can be accessed in them, (https://ecf.wiwd.uscourts.gov/cgi-bin/DktRpt.pl?794720213160909-L_1_0-1, last visited October 9, 2022);

- the transcripts of the depositions of David R. Stockwell and Todd R. DeMonte;

- the detailed billing entries from Pines Bach shown on the invoices sent to Mills. (Exhibit B);

- the engagement agreement with Pines Bach which Mills entered into (Exhibit C);

- numerous emails to and from Pines Bach and Mills, true and correct copies of which are attached hereto and incorporated herein by reference as Exhibit D;

- discussions with Susy Brown, the Pines Bach accounting manager, Jordan Loeb, a Pines Bach partner who provided legal services in the Bou-Matic case and one of the members of its executive committee, and Lisa Fox, the Pines Bach Director of Operations; and,

- My personal knowledge of my activities and those of the collaborative legal team from Pines Bach consisting of legal professionals who assisted me on behalf of Mills in the defense of the Bou-Matic case.

B.    **The relevant facts:**

1.    The Bou-Matic case was not a complex commercial case. It was a dispute about Mills' alleged misconduct that supposedly occurred while he was employed by Bou-Matic LLC.

2.    Mills was not only represented by Pines Bach but was also represented by Adam Milasincic (hereinafter "Milasincic") and Steve Mitby (hereinafter "Mitby") of the Ahmad Zavitsanos Anaipakos Alavi Mensing law firm in Houston, Texas.

3.   The strategy that was agreed upon by Mills with me, Mitby and Milasincic was to seek dismissal of the Bou-Matic case for lack of diversity jurisdiction, lack of personal jurisdiction and a failure to state a claim under the federal Computer Fraud & Abuse Act (CAFA).

4.   Mills was fully aware of, agreed with, and supported that strategy.

5.   Mills was fully informed about the strategy to defeat jurisdiction in the Western District of Wisconsin. In fact, when Pines Bach was initially engaged by Mills, a brief in support of a motion to dismiss had already been prepared by Milasincic, which I then highly edited and shared with Mills. The transmittal email and document are attached hereto and incorporated herein by reference as Exhibit E.

6.   Mills fully participated in assisting Pines Bach to gather evidence to support his claim that his citizenship and primary residence were in Texas, not Colorado, as had been alleged by Bou-Matic. (Dkt. 12)

7.   If there was no federal jurisdiction in the Western District of Wisconsin and if the CAFA claim was dismissed for failure to state a claim, Mills believed and communicated by email to Pines Bach and his Texas lawyers that Bou-Matic would not pursue the case if it had to be brought in Texas.

8.   Mills never made a complaint to me or to anyone else at Pines Bach when, together with Mills' Texas counsel, Milasincic and Mitby, we pursued the strategy.  In fact, Mills affirmed it by email on May 22, 2019:

>   Lester: Steve and I just spoke and agree with you.
>   Push back on the no jurisdiction and the computer
>   fraud…
(Ex. D, p. 1)

9.   Mills reiterated his understanding and affirmance of the strategy on June 18, 2019:

>   They sued me in Wisconsin to get my claim dismissed
>   and keep me out of Texas and now the Texas claim
>   got dismissed and we have a good chance of
>   dismissing their Wisconsin claim.  We need to push
>   on them in Wisconsin.
(Ex. D, p. 3)

10. Mills never insisted that non-jurisdictional depositions be taken while the strategy of seeking dismissal of the Bou-Matic case for lack of diversity jurisdiction, lack of personal jurisdiction, and a failure to state a claim under the federal CAFA was being pursued.

11. The Magistrate ruled on August 8, 2019 that:

> Defendant is to complete his disclosures not later than August 21, 2019, and he is to sit for a jurisdictional deposition in Houston not later than August 30, 2019. Plaintiffs' response to the motion to dismiss is due by September 9, 2019, with the reply due by September 16, 2019. The court denied defendant's request to stay non-jurisdictional discovery and directed the parties to meet and confer on new disclosure deadlines, taking into account the need first to complete the record on their jurisdictional dispute.

12. Mills agreed with complied with that order. He did not insist that Pines Bach commence non-jurisdictional discovery. In fact, on August 9, 2019, he emailed the following, in part:

> …. Lester correctly wants to wait and take depositions after my deposition is taken in Houston on Jurisdictional matters.  Lester has made it clear that my deposition is limited to just Jurisdiction and nothing else even though we are not limited in the depositions of the others…

(Ex. D, p. 4)

And he sent another email on September 11, 2109, which stated, in part:

> Lester: I want to push to get the depos done. …. The depos help us so we need to push….

(Ex. D, p. 5)

13. Notices for the depositions that Mills wanted Pines Bach to conduct were sent out by Pines Bach on September 23 and 24, 2019. for various witnesses to be deposed during the week of October 15, 2019. The plaintiff waited until October 11, 2019, to seek a protective order which had the effect of postponing those depositions. The Magistrate denied the motion for protective order (Dkt. 58 and 59) and ultimately awarded Mills $3,000 in costs due to the Plaintiff's conduct. (Dkt. 64 and 72)

14. Mills believed that the deposition of David R. Stockwell and John R. DeMonte would put pressure on John Kotts, the principal of Bou-Matic, to dismiss the case. (Ex. D, pp. 5 and 6)

15. The depositions of Stockwell and DeMonte were completed in late October, 2019. They were taken by Attorney Jordan Loeb, and the transcripts show that he conducted himself professionally, formulated questions appropriately, and through his questions thoroughly sought information on the issues relevant to the case.

16. The depositions were taken after Mills had spent a number of days at the Pines Bach office in Madison, Wisconsin, discussing the case with Attorney Loeb and providing facts to him in preparation for the depositions.

17. During the course of the Bou-Matic case, there were no communications, either in writing or orally, through which Mills objected to any activity Pines Bach engaged in, any document it filed, or any discovery it pursued on his behalf.

18. Examples of high-quality legal work performed by Pines Bach in furtherance of the jurisdictional strategy are the brief in support of the motion to dismiss the amended complaint (Dkt. 20), the brief in support of a motion for protective order (Dkt. 32), and the brief in opposition to plaintiffs' motion to compel (Dkt. 34).

19. Mills received an invoice from Pines Bach every month while he was being represented by the firm. (Exhibit B).

20. Mills did not object to any entry on any billing statement that he was sent by Pines Bach despite the fact that the Engagement Agreement, Exhibit C at pages 6-8, informed Mills of his right to contest an invoice or any entry on it.

21. Susy Brown and Jordan Loeb, who were the only people other than I employed by or partners of Pines Bach who communicated with Mills about his unpaid bills, confirmed that they engaged in none of the following behaviors when communicating with Mills in an effort to collect the amount of money he owed the firm:

    a. used or threatened force or violence to cause physical harm to Mills or his dependents or property;

9

b.  threatened criminal prosecution or disclosed or threatened to disclose information adversely affecting Mills' reputation for credit worthiness with knowledge or reason to know that the information is false;

c.  initiated or threatened to initiate communication with Mills' employer prior to obtaining final judgment against him;

d.  disclosed or threatened to disclose to a person other than Mills or his wife information affecting Mills' reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information.

e.  disclosed or threatened to disclose information concerning the existence of a debt known to be reasonably disputed by Mills without disclosing the fact that Mills disputed the debt;

f.  communicated with Mills or any person associated with him with such frequency or at such unusual hours or in such a manner as could reasonably have been expected to threaten or harass Mills, or engaged in other conduct which could reasonably have been expected to threaten or harass Mills or a person related Mills;

g.  used obscene or threatening language in communicating with Mills or a person related to Mills, or claimed, attempted, or threatened to enforce a right with knowledge or reason to know that the right did not exist;

h.  used a communication which simulated legal or judicial process or which gave the appearance of being authorized, issued, or approved by a government, governmental agency, or attorney-at-law when it was not.

22. I personally communicated with Mills in an attempt to collect the amount of money that he owed to Pines Bach. I did not:

a.  use or threaten force or violence to cause physical harm to Mills or his dependents or property;

b.  threaten criminal prosecution or disclose or threaten to disclose information adversely affecting Mills' reputation for credit

worthiness with knowledge or reason to know that the information is false;

c.   initiate or threaten to initiate communication with Mills' employer prior to obtaining final judgment against him;

d.   disclose or threaten to disclose to a person other than Mills or his wife information affecting Mills' reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information.

e.   disclose or threaten to disclose information concerning the existence of a debt known to be reasonably disputed by Mills without disclosing the fact that Mills disputed the debt;

f.   communicate with Mills or any person associated with him with such frequency or at such unusual hours or in such a manner as could reasonably have been expected to threaten or harass Mills, or engage in other conduct which could reasonably have been expected to threaten or harass Mills or a person related Mills;

g.   use obscene or threatening language in communicating with Mills or a person related to Mills, or claim, attempt, or threaten to enforce a right with knowledge or reason to know that the right did not exist;

h.   use a communication which simulated legal or judicial process or which gave the appearance of being authorized, issued, or approved by a government, governmental agency, or attorney-at-law when it was not.

23.   Nor did I ever offer to settle Mills' unpaid balance to Pines Bach for its services for $60,000 because of inadequate representation of him in the Bou-Matic case. In fact, in an effort to assist him, I represented him *pro bono* in making a claim against his insurer, the Hanover Insurance company, for payment of Pines Bach's fees.

24.   I had numerous email communications with Mills about how to resolve his bill. In none of those email communications did Mills ever complain about the quality of services performed by Pines Bach. Nor did Mills claim that he had been defrauded or deceived, or that Pines Bach had breached any fiduciary duty it may have owed him. Copies of those email

communications are attached hereto and incorporated herein by reference as Exhibit F.

25. Having been a Pines Bach partner since 1984, I personally know that neither I nor anyone at Pines Bach at any time communicated to the public any information about Pines Bach's services or the competence of its attorneys or staff that was false, deceptive, or misleading.

26. Likewise, I have reviewed all the of written filings made by Pines Bach in the Bou-Matic case, including correspondence. They were produced in accordance with the standard of practice required of Wisconsin attorneys and the Wisconsin Supreme Court Rule of Professional Conduct that govern the behavior of Wisconsin attorneys.

27. There is no evidence whatsoever that shows or suggests that Pines Bach breached any fiduciary duty that it may have had to Mills.

28. There is no evidence that Pines Bach was unjustly enriched through its representation of Mills. In fact, the evidence shows the opposite: Pines Bach provided services to Mills for which it did not receive compensation to which it was entitled under its Engagement Agreement with Mills.

## 8.    Conclusion

This report contains all my opinions. It is based solely on the information that I have reviewed to date. If further information is provided or becomes available to me, I am prepared to review it and provide a supplemental report and additional opinions, if necessary.

Dated this 17 day of October 2022.

Respectfully submitted,

Lester A. Pines