**Lester Pines**

| | |
|---|---|
| **From:** | Lester Pines |
| **Sent:** | Saturday, April 27, 2019 6:06 PM |
| **To:** | Adam Milasincic; Steve Mitby; Mickey Mills |
| **Cc:** | Heidi Buttchen |
| **Subject:** | RE: Mills MTD Revised |
| **Attachments:** | 2019-04-24 Declaration of M.A. Mills (Wisconsin) (with LAP Edits).docx; 33G2735-Memorandum in Support of Motion to Dismiss, Bou-Matic, et al v Mills (W.D. Wis, 19-CV-158(LAP version 4.27.19).DOCX; 33G2728-Mills Motion to Dismiss.DOCX |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Steve, Adam and Mickey,

I spent a substantial amount of time reorganizing and revising the latest version of the motion containing the supporting memorandum that Adam sent me on Wednesday and which Steve had also made edits on. I also revised Mickey's affidavit and added paragraph attaching the Harris County Complaint and the Anderson litigation hold letter. We are very close to having these submissions in final form. Although I have proofread the motion, memorandum and affidavit, I am not known as one of the best proofreaders of my own work. Please review these documents carefully and feel free to make whatever edits and addition that you find necessary or helpful.

I divided the motion and memorandum of law in support into two separate documents, which is my preference. They, along with Mickey's revised affidavit, are attached. (Note that I changed the font in all of the documents from Times New Roman to Book Antiqua. I did that because Times New Roman is hard for judges to read and the 7th circuit strongly encourages the use of fonts, like Book Antiqua, which are used in books, rather than fonts like Times New Roman, which comes from the *London Times,* and is designed for newspaper readers. The "book like" fonts are not mandatory in any court in the 7th Circuit, they are merely preferred.)

We have to file the motion, affidavit and memorandum in support no later than May 1, which is this coming Wednesday. As Steve and Adam are not yet admitted in the Western District of Wisconsin and do not yet have ECF access in it, we'll need to do the filing here in Madison:

> **Our office has a rule, which the secretaries and paralegals here depend upon to schedule their work, that motions and briefs that needs to be filed under a deadline in court must be completed the day before the filing is due. So, we need to get everything in final form by the close of business on Tuesday, May 30.**

To do that I will need all of the attachments to Mickey's affidavit, which are: A: Texas auto registration; B: Amegy Bank statement; C: insurance statement; D: medical bills; E: synagogue dues statement; I: IRS filing; J: Complaint filed in Harris County case; & K: letter from Atty Anderson about litigation hold on emails from tablet. For all of these attachments, please ensure that any social security numbers, account numbers and dates of birth are redacted.

Best,

**EXHIBIT E**

Lester

Lester A. Pines
Attorney at Law

608.251.0101  Phone
608.251.2883  Fax
lpines@pinesbach.com

Pines Bach LLP
122 W Washington Ave, Ste 900
Madison, WI 53703
www.pinesbach.com

 PINES BACH

**Personal Service. Positive Outcomes.**

**From:** Adam Milasincic <amilasincic@AZALAW.COM>
**Sent:** Wednesday, April 24, 2019 1:40 PM
**To:** Lester Pines <lpines@pinesbach.com>
**Cc:** Steve Mitby <smitby@AZALAW.COM>
**Subject:** Mills MTD Revised

Lester,

Here is the revised brief – which incorporates your earlier comments – for your further review prior to filing next week.

Thanks,

 

**ADAM MILASINCIC**
*Attorney*
713-600-4956
1221 McKinney Suite 2500
Houston, Texas 77010
in | vCard | Profile

The information contained in this message is privileged, confidential and intended only for the use of the addressee. If the reader of this message is not the intended recipient or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of the message is strictly prohibited. If you have received this message in error, please immediately notify the sender by return e-mail and return the original message to the sender at the above e-mail address. Thank you.

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more <u>Click Here</u>.

BOU-MATIC, LLC, et al

     Plaintiffs,

  v.                                Case No.19-CV-158-SLC

MICHAEL A. MILLS,

     Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

## I.    Introduction

The Plaintiffs are seeking to establish federal jurisdiction based on a federal question with supplemental jurisdiction over their state law breach of fiduciary duty claims. If their federal question jurisdiction claim fails, they alternatively rely on a purported complete diversity of citizenship for jurisdiction over all of their claims.

Count I of the Complaint (Dkt. 1, ¶1-65) [1], which is the claim of Plaintiff Bou-Matic, LLC, ("Bou-Matic") alleges jurisdiction under 28. U.S.C. § 1331 based the Computer Fraud & Abuse Act ("CFAA"), 18 U.S.C. § 1030(a)(5). However, Bout-Matic's claim is insufficient to establish subject matter jurisdiction under 28 U.S.C. § 1331 because it has not alleged that the Defendant Michael A. Mills ("Mills") destroyed any computer or damaged any computer and it does not even describe how any actions by

---

[1] Defendant, rather than continually repeat "Dkt. 1" which is the complaint, will hereafter cite to the paragraphs of the complaint.

Mills caused recoverable damages that — at or in excess the CFAA's jurisdictional $5,000 damage threshold.

A second alleged basis for federal jurisdiction that encompasses Counts 1 through 3 is diversity of citizenship under 28 U.S.C § 1332. For the court to take jurisdiction over their claim, the Plaintiffs must allege facts to show a complete diversity of citizenship. Because the Plaintiffs are citizens of Texas, Nevada and Louisiana (¶21), the can be complete diversity of citizenship only if Mills is not a citizen of one of those states. Consequently, the Plaintiffs have alleged that Mills is a citizen of Colorado despite the fact that it is well-known that Mills lives in Houston, Texas and has since 1965.[2]

Third, were the court to find that the CFAA gives it federal question jurisdiction, there is no reason for the Court to exercise supplemental jurisdiction under 28 U.S.C § 1367 over the alleged fiduciary duty claims found in Counts II & III.

Fourth, as to Bou-Matic's CFAA claim (Count I) and Knotts and Knotts Capital fiduciary duty claim (Counts III), Mills is not subject to personal jurisdiction in Wisconsin The complaint does not allege that Mills conducted any activity in Wisconsin that would reasonably establish any expectation of being sued here on either the CFAA claim or the fiduciary duty claims in Count III. To the contrary, none of the alleged activities described in those claims occurred in Wisconsin, negating any basis for personal jurisdiction here.

Finally, setting aside the complaint's jurisdictional flaws, the entire complaint should be dismissed under Rule 12(b)(6) because none of the counts in it allege sufficient

---

[2] Mills owns a vacation home in Colorado. (Mills Dec. ¶¶12-16) Most charitably stated, perhaps Plaintiffs failed to make a sufficient inquiry into where Mills is actually as citizen and assumed that having a vacation home in Colorado made him a citizen there.

facts from which the court could conclude that the Plaintiffs have provided it with sufficient facts in the complaint from which the court could, under the *Iqbal* and *Twombly* standards, find that their claims are plausible. Among other shortcomings, Plaintiffs do not identify any compensable damages that Mills allegedly caused to any of the Plaintiffs on any of the counts.

II.    **The Court should dismiss all claims in the complaint for lack of subject-matter jurisdiction under 12(b)(1) F.R.Civ.P**

    A.    **Bou-Matic's Computer Fraud & Abuse Act ("CFAA"), 18 U.S.C. § 1030(a)(5) claim (Count I) does not provide with federal question jurisdiction under 28. U.S.C. § 1331 because Bou-Matic fails to pleadany sufficient facts to show that a computer or data from one has been damaged and that the damages exceed $5,000, both of which are necessary jurisdictional facts that must be plead in a CFAA claim.**

Merely because a Plaintiff labels allegations in a complaint as a CFAA claim does mean that a federal court has subject matter if the complaint does not allege sufficient facts to show that there has been damage to a computer and that the Plaintiff has suffered at least $5,000 in losses, and (*See* 18 U.S.C. § 1030(c)(4)(A)(i)(I) (setting out $5,000 minimum); *Landmark Credit Union v. Doberstein*, 746 F. Supp. 2d 990, 994 (E.D. Wis. 2010) (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)). *See also* 18 U.S.C. § 1030(c)(4)(A)(i)(I); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 n.11 (2006), (explaining that amount-in-controversy requirements in federal statutes restrict subject-matter jurisdiction); and *RitLabs, S.R.L. v. RitLabs, Inc.*, No. 1:12-CV-215 AJT/IDD, 2012 WL 6021328, at *1 (E.D. Va. Nov. 30, 2012), (dismissing CFAA claim for lack of subject-matter jurisdiction because damages were less than $5,000).

Bou-Matic sells dairy equipment. (Complaint, Dkt. 1, ¶ 15). Mills, through Mills. P.C., served as Bou-Matic's business manager from 2014 to February 2019, when he resigned. (¶ 15). For Mills' services, Mills, P.C had contracted with Bou-Matic's controlling owner, John P. Kotts, to receive monthly payments as well as bonus compensation based on Bou-Matic's financial performance. Although Kotts paid the 2015 bonus, he ultimately reneged on his promise to pay bonuses for subsequent years. As a result, Mills P.C. has sued Kotts for breach of contract in Texas. (Mills Dec., Ex. ___)[3]

Bou-Matic issued a computer tablet to Mills. (¶ 35). After Mills resigned, Bou-Matic's lawyers wrote to Mills, instructing him to (1) ensure that "any electronic data has been removed from any storage devices on which it may currently exist," (2) preserve the removed data for litigation use, and (3) return the phone and tablet to Bou-Matic. (Mills Dec., Ex. ___).

Mills complied with Anderson's demands by arranging for removal of the email copies stored on Mills' tablet. To comply with Anderson's direction, Mills engaged the services of a computer forensics professional, who transferred the emails from the tablet to a separate storage device, keeping the forensic copy as ordered for litigation purposes, and sending the devices back to Bou-Matic. (Mills Dec.¶ 18)

Bou-Matic tries to spin these facts into a violation of the CFAA claim. According to Bou-Matic, Mills deleted "files and contents of his company issued computer tablet," which caused Mills to incur putative damages including "attorney's fees." (¶¶ 62, 65)

---

[3] Rather than proceed in Texas where this case belongs, the Plaintiffs have sued in this court, where there is no jurisdiction.

In its effort to satisfy its jurisdictional burden, Bou-Matic alleges only that it "has suffered losses aggregating more than $5,000, including but not limited to, the hiring of information technology professionals to restore the damaged computer tablet *and attorney's fees*." (Complaint, ¶ 65)[4]. Those allegations are insufficient and conclusory

First, Bou-Matic never states that how the tablet at issue was "damaged," let alone how information technology consultants were needed to "restore" the tablet. To establish federal-question jurisdiction, Bou-Matic cannot rely on vague assertions. Instead, it has the burden to "clearly allege facts that invoke federal court jurisdiction." *Sprint Spectrum L.P. v. City of Carmel, Indiana*, 361 F.3d 998, 1001 (7th Cir. 2004).

Second, Bou-Matic relies on its "attorney's fees" to surpass $5,000 in loss. (¶ 65) But "to meet the $5,000 threshold, [Bou-Matic] must identify the costs—apart from this lawsuit—that it spent to investigate [Mills'] actions, and then it must prove that those costs were reasonable." *See Weather Shield Mfg., Inc. v. Drost*, No. 17-CV-294-JDP, 2018 WL 3824150, at *4 (W.D. Wis. Aug. 10, 2018) (emphasis added). Additionally, Bou-Matic claims that part of its investigation was to determine whether Mills "copied" files from the tablet. (¶ 64) Copying or misappropriating files does not damage a computer and thus would not violate the CFAA even if Bou-Matic had pleaded such a claim. *Garelli Wong & Assocs., Inc. v. Nichols*, 551 F. Supp. 2d 704, 710 (N.D. Ill. 2008).

In sum, Bou-Matic's complaint reveals that Bou-Matic's alleged $5,000 in losses include both (1) prohibited attorneys' fees and (2) investigation of bad acts nowhere

---

[4] In the balance of this memorandum, references to the complaint will be made solely by paragraph number.

pleaded and that, even if true, would not violate the CFAA. Without sufficient evidence to prove $5,000 in jurisdictional losses, Bou-Matic's complaint, Count I, does not trigger federal-question jurisdiction.

## B. The CFAA claim appears to be an effort to manufacture federal jurisdiction.

With its missing elements, and non-existent relationship to the fiduciary-duty claims set out in Counts II & III of the complaint, Bou-Matic's CFAA claim appears designed to manufacture jurisdiction in federal court over purely state-law claims. Merely invoking a federal statute does not create subject-matter jurisdiction under 28 U.S.C. § 1331. Instead, "federal courts are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit." *Hagans v. Lavine*, 415 U.S. 528, 536 (1974). For this reason, a defective and "less than serious" CFAA claim is "woefully insufficient to create jurisdiction." *Doberstein*, 746 F. Supp. 2d at 994.

Bou-Matic's claim is inherently nonviable for at least two reasons. First, Bou-Matic's CFAA claim requires proof of ***unauthorized*** acts. 18 U.S.C. § 1030(a)(5). Bou-Matic admits, however, that it gave the computer (tablet) to Mills. (¶ 31) Moreover, Bou-Matic's lawyers not only permitted Mills to delete files from the computer, they **instructed** Mills to both "confirm that any electronic data has been removed from any storage devices on which it may currently exist" and return the devices. (Mills. Dec. Ex. 2)[5]

---

[5]     Plaintiffs relayed these instructions in the February 11, 2019 letter from their attorney, the same letter that they cite and rely on in paragraph 50 of their Complaint.

That is exactly what Mills did. Specifically, he arranged for Bou-Matic's emails to be removed from the computer (tablet), forensically preserved them pursuant to Bou-Matic's litigation hold notice, and returned the "computer" i.e. his cell phone and tablet, to Bou-Matic. (Mills Dec. ¶ 18). Thus, his acts could not have been "unauthorized." Despite Mills' compliance with Bou-Matic's request to ensure the removal of its data from all devices, Bou-Matic has now sued Mills under the CFAA for removing the data as instructed.

Second, Bou-Matic merely alleges that Mills deleted the local copies of unspecified files stored on his tablet. (¶ 56). Bou-Matic admits, however, that these files are also housed on Bou-Matic's servers. (¶ 55).

In other words, Bou-Matic does not claim to have lost the original files, just the copies that were on Mills' tablet.[6] Merely removing copies of a still-obtainable original file does not constitute "damage" of the sort required for a CFAA claim.[7] Damage means "impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). Data that can still be accessed through other means is neither impaired nor unavailable.

In cases like this one, where the "deleted" data still exists elsewhere, the plaintiff's extra work to access the data is not actionable. *Dana Ltd. v. Am. Axle & Mfg. Holdings, Inc.,*

---

[6]    Even that claim is untrue because, per Bou-Matic's instructions, Mills forensically preserved the contents of the devices in response to the attorney demand letter he received. (Mills. Dec 18).

[7]    In the heading of Count I, Bou-Matic limits its CFAA cause of action to the violations stated in 18 U.S.C. § 1030(a)(5), all of which require "damage" as an element.

No. 1:10-CV-450, 2012 WL 2524008, at *6 (W.D. Mich. June 29, 2012) (dismissing CFAA claim because, although employees deleted files from work-issued computer, there was no evidence the files were original or otherwise irretrievable); *Cheney v. IPD Analytics, LLC*, No. 08-23188CIV, 2009 WL 3806171, at *6 (S.D. Fla. Aug. 28, 2009) ("[D]eletion of files alone does not constitute damage if the deleted data is still available to the plaintiff through other means.").

This court has recognized a similar principle, holding that blocking someone from their email account—as opposed to destroying the data in the account—is not "damage." *Fischer v. Mt. Olive Lutheran Church*, 207 F. Supp. 2d 914, 926–27 (W.D. Wis. 2002). The same is true here. Whether or not Bou-Matic can still access its emails as they were stored on Mills' computer, it can still retrieve those emails either from its own server or from the litigation-hold forensic image that Bou-Matic asked Mills to create.

Faced with a deficient CFAA claim that was possibly plead as a way to federalize a Texas state-law claims dispute, the court should dismiss the claim for lack of subject matter jurisdiction. *See Doberstein*, 746 F. Supp. 2d at 994 ("Reviewing the complaint as it stands, the sole federal claim is woefully insufficient to create jurisdiction and, voiced in a most charitable tone, is a less than serious claim.").

**C. If the Court dismisses the CFAA claim, the breach of fiduciary claims Counts II & III, must be dismissed for lack of diversity jurisdiction because all the parties in those counts are Texas citizens and the Plaintiffs have not alleged that they were damaged in an amount exceeding $75,000 on any of those claims.**

**1. Mills is domiciled in and a citizen of Texas.**

If the Court concludes that Plaintiff's CFAA claim does not give the court jurisdiction, then diversity of citizenship would be the only possible basis for subject-matter jurisdiction over the remaining claims. As the court well knows, only "complete diversity" is sufficient to trigger federal jurisdiction under 28 U.S.C. § 1332(a). *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990).

Complete diversity is lacking here. All four plaintiffs admit they are Texas citizens. (¶¶ 7-10). In an attempt to create complete diversity of citizenship the Plaintiffs have alleged that Mills is a Colorado citizen (¶ 11). That allegation is preposterous: as the Declaration of Michael A. Mills states, he is 76 years old, has been a citizen of Texas since 1965 and continues to be a citizen of Texas. (Mills. Dec. ¶ 1–3).

Plaintiffs have the burden of proving Mills' citizenship by a preponderance of the evidence. *Muscarello v. Ogle Cnty. Bd. of Comm'rs*, 610 F.3d 416, 424 (7th Cir. 2010). A natural person is a citizen of the state in which he is domiciled. *O'Neal v. Atwal*, 425 F. Supp. 2d 944, 946 (W.D. Wis. 2006). Domicile is where a person "intends to live over the long run." *Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012). Determining domicile requires considering the totality of circumstances, including factors such as residence, place of employment, driver's license and vehicle registration, payment of taxes, location of bank accounts, and whether the individual belongs to any clubs or organizations. *Newell v. O & K Steel Corp.*, 42 F. App'x 830, 833 (7th Cir. 2002); *O'Neal*, 425 F. Supp. 2d at 947.

Mills has lived and worked in Houston since moving there (from Florida) in 1965. (Mills. Dec. ¶ 2). Mills started as an accountant at Tenneco in Houston, graduated from law

school at the South Texas College of Law in Houston, and has been a member of the Texas bar since 1968. (Mills Dec. ¶¶ 3–4) Since the 1970s, Mills has owned and managed M.A. Mills, P.C., a Texas professional corporation with its current office at 8811 Gaylord in Houston. (Mills Dec. ¶ 4). His driver's license is Texas-issued, and all of his vehicles are registered and insured in Texas. (Mills Dec. ¶ 5). Mills' personal bank accounts are with Amegy Bank in Houston, his brokerage account is with Wells Fargo in Houston, and his doctor, dentist, financial advisor, and personal attorney are all based in Houston. (Mills Dec. ¶¶ 6 & 8).

Mills' business and personal phone numbers are Houston-based, and Mills receives all of his important correspondence, bills, brokerage, banking, and credit card-related documents at his current address: 8564 Forum Drive, Houston, Texas 77055. (Mills Dec.; ¶¶ 7 & 14). Likewise, Mills pays taxes in Texas, as reflected by the residence on his IRS tax returns. (Mills. Dec. ¶ 11. He is also a member of a Houston fitness club and attends synagogue in Houston. (Mills Dec. ¶¶ 9–10).

The only fact linking Mills to Colorado is that, in 2012, he bought a part-time vacation house in the Broadmoor Resort community of Colorado Springs. Mills has tried to sell that vacation house since 2016, and it is currently listed for sale. (Mills. Dec. ¶ 15) Mills has not moved to Colorado. In fact, when he bought the vacation house, he was working full-time in Houston. (Mills. Dec. ¶ 13)[8] He never used the Colorado vacation

---

[8]     Recently, Mills sold his home in Houston and has been temporarily living with his son at 8564 Forum Drive, Houston, Texas, while the home search continues. Ever since selling his Houston home, Mills has remained in the market for Houston properties, has a real estate agent

house as a permanent residence and has never claimed any homestead or other tax benefit in Colorado. (Mills Dec. ¶ 13)

Owning a vacation house—even one that a person spends considerable time visiting—does not establish citizenship in that state. "A second home in another state is not unusual, and courts should be cautious about inferring that someone has abandoned a domicile of many years simply by residing in another state for a time." *Miller v. Fryzel*, 499 F. App'x 601, 603 (7th Cir. 2013) (attorney's affidavit, in which he attested that Illinois always had been his domicile, and acknowledged paying Virginia income taxes but averred that he received mail at his Illinois residence, held an Illinois driver's license, and was registered to vote in Illinois, sufficed to establish attorney's continuing domicile in Illinois despite attorney's residence in Virginia); *Galva Foundry Co. v. Heiden*, 924 F.2d 729, 730–31 (7th Cir. 1991) (even buying house and changing voter registration and tax filings to Florida did not destroy longstanding Illinois citizenship where party "intended no change in the manner or style of his life, the center of gravity of which was and remains in [Illinois]").

2. **Plaintiffs' have not plead facts to show that they suffered any damages, much less $75,000 in damages, from the fiduciary duty claims alleged in Counts II & III.**

Plaintiffs have not described in their fiduciary-duty claims how they suffered *any* damages at all. Count II, at Paragraph 74, of the Complaint lists Mills' supposed breaches of fiduciary duty to Bou-Matic and Count III, at Paragraph 87, does the same for the Knotts

---

in Houston, and receives frequent listings from his broker to aid with his continued search for a new home in Houston. (Mills Dec., ¶ 17)

plaintiffs fiduciary duty claim. However, while both Count II and Count III alleged that Bou-Matic and the Knots plaintiff were "damaged," such a conclusory statement is insufficient to show that anything the Mills did actually caused any damages. For example, Bou-Matic does allege that any employees quit because of Mills alleged statement or that that Bou-Matic otherwise lost money as a result of Mills' alleged behavior. Nor do either Bou-Matic or any other plaintiff allege that, as a result of anything that Mills allegedly did they lost money, customers, valuable employees, confidential information or anything else.

The only thing that Bou-Matic and the other plaintiffs have alleged about their "damages" is that they "suffered damages . . .in a amount to be proved at trial." (¶¶ 75 & 88) That is fatal to Plaintiffs' diversity jurisdiction claim because the they have failed to allege sufficient facts to show that it is plausible that any of the fiduciary duty claims resulted in damage in excess of $75,000.

III.  **If the Court concludes that it does not have diversity jurisdiction but that the CFAA claim is sufficient to establish federal question jurisdiction, the Court should decline to exercise supplemental jurisdiction over the fiduciary duty claims, Counts II & III, because those claims would substantially predominate over the CFAA claim and, judicial economy, fairness, economy and comity favor those matters being heard in the pending Texas litigation.**

**A. The state law fiduciary claims would predominate over the CFAA claim.**

If the Court concludes that Bou-Matic has sufficiently plead a CFAA claim, that does not require the court, through its exercise of supplemental jurisdiction, federalize the state-law fiduciary duty claims found in Counts II and III. On those claims, the parties all reside in Texas. The court should instead decline supplemental jurisdiction because

the fiduciary-duty claims "substantially predominat[e] over the [CFAA] claim over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2).

To assess which claims predominate, the court may consider "the scope of the state and federal issues, the terms of proof required by each type of claim, the comprehensiveness of the remedies, and the ability to dismiss the state claims without prejudice." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726–27 (1966). All of those factors reveal that the fiduciary-duty claims substantially predominate over Bou-Matic's CFAA claim.

First, the fiduciary-duty claims involve four separate plaintiffs, making Bou-Matic's CFAA claim an especially thin reed on which to support supplemental jurisdiction over state-law claims by the three other plaintiffs.

Second, the CFAA claim is limited to one issue—the alleged deletion of files from a computer. In contrast, the fiduciary-claims turn on (1) Mills' supposed "trash-talking" about Kotts around the water cooler and (2) Mills' suggestions that Bou-Matic employees should quit. (¶¶ 74, 87)[9] Similarly, the proof required for a CFAA claim is forensic while the fiduciary-duty claims appear to involve a number of witnesses and documents. *See* ¶ 39.

---

[9]    *Cf. Miller v. Interstate Auto Group, Inc.*, 14-CV-116-SLC, 2014 WL 4437675, at *3 (W.D. Wis. Sept. 9, 2014) (declining to exercise supplemental jurisdiction in part because "[a]fter the initial determination whether the EFTA applies and what it requires, the only question in plaintiff's case appears to be whether defendant complied with the Act. Defendant's case, on the other hand, involves an entirely separate—and much larger—set of issues than plaintiff's.").

**B. The principles of economy, convenience, fairness and comity direct that the fiduciary duty claims be tried in Texas.**

In exercising its discretion about whether to take supplemental jurisdiction over state law claims, the court must apply "principles of economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997). When "permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog," declining supplemental jurisdiction is the best practice. *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3rd Cir. 2003).

Using those principles, district courts often dismiss state law claims when "the crux of [the] case is the state law claims" and "the CFAA claim is only tangential." *Zurich Am. Ins. Co. v. Bowman*, 2:10-CV-00988-RLH, 2010 WL 5239239, at *2 (D. Nev. Dec. 16, 2010) (declining supplemental jurisdiction because the "CFAA claim is not the real body of" the case and "alleged unauthorized access of information on [computers] is not the core component of [plaintiff's] injuries"); *Contemporary Servs. Corp. v. Hartman*, No. 08-02967, 2008 WL 3049891, at *3 (C.D. Cal. Aug. 4, 2008) (same).

In an analysis equally apposite to this case, one court found:

> In the instant case, the CFAA claim is merely "an appendage" to Dedalus's state law claims, which form the "real body of the case." The CFAA claim involves a single allegation-the erasing of the two hard drives-that occurred after Dedalus terminated Banach's employment. The CFAA claim will likely involve limited discovery and analysis of the narrow legal issue of whether Banach accessed a protected computer without authorization and caused damage to the hard drives. In contrast, Dedalus's six state law claims revolve around allegations that Banach breached her fiduciary duties and misappropriated Motherwell's artwork. These allegations focus on a much longer time span than the CFAA claim and are likely to involve extensive discovery. The state law claims will also require

legal analysis distinct from the CFAA claim. These state law claims are at the heart of this case and substantially predominate over the CFAA claim.

*Dedalus Found. v. Banach*, No. 09-CIV-2842, 2009 WL 3398595, at *5 (S.D.N.Y. Oct. 16, 2009).

The same considerations favor dismissal of the state law claims here.

Finally, the court can easily dismiss the fiduciary-duty claims without prejudice. The four-year limitations period is nowhere close to expiring on those claims; indeed, Kotts and Bou-Matic are already parties to a lawsuit in Texas involving Mills' same bonus payments. (Mills Dec. Ex. ___). All of the plaintiffs here could easily re-assert their fiduciary-duty claims as counterclaims or third-party claims in the Texas suit. *See* TEX. R. CIV. P. 40 (joinder of parties); 51 (joinder of claims).

Judicial economy, convenience, fairness, and comity all counsel in favor of dismissal. Mills has just appeared in this case, the parties have exchanged no discovery, and no one has sought the court's intervention yet.

In Texas, meanwhile, Mills' corporation has already served discovery, Kotts and Bou-Matic have answered and filed a substantive motion, two hearings are scheduled, and the parties are conferring about a discovery motion to be filed by Mills. *See* Ex. 4 (Milasincic Decl., ¶ ___) Comity weighs especially heavily in this analysis. The gist of the fiduciary-duty claims is to attack Mills for duties the plaintiffs contend he owed as a Texas-licensed attorney. The appropriate forum for state-law claims between Texas parties and their alleged Texas attorney is state court in Texas.

## IV. The Court should dismiss Counts I and III of the Complaint for lack of personal jurisdiction.

Plaintiffs do not assert that Wisconsin courts have general jurisdiction over Mills, who is subject to general jurisdiction only in the state of his domicile and the state where he was served—both Texas. *Milliken v. Meyer*, 311 U.S. 457, 463 (1940). As its name suggests, specific personal jurisdiction must be assessed on a claim-specific basis. Minimum contacts sufficient to create Wisconsin jurisdiction concerning one cause of action might not establish personal jurisdiction for other claims.[10] That is because a primary purpose of jurisdictional protections is to give people "fair warning that *a particular activity* may subject [them] to the jurisdiction of a foreign sovereign." *See Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment) (emphasis added). Claim-specific jurisdictional analysis is especially vital here given the number of plaintiffs and the unrelatedness of the alleged facts relevant to the CFAA claim and the two state-law claims.

### A. Mills is not subject to personal jurisdiction in Wisconsin for the CFAA claim.

Only Mills' Wisconsin contacts relevant to the CFAA claim can support specific jurisdiction as to that claim. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997) ("We cannot simply aggregate all of a defendant's contacts with a state—no matter

---

10      The Seventh Circuit has not addressed whether personal jurisdiction is claim-specific, but other circuits uniformly agree that it is, and district courts here follow the claim-specific approach. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009); *Remick v. Manfredy*, 238 F.3d 248, 256-59 (3d Cir. 2001); *Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir. 1999); *e.g., My Canary LLC v. Cessna Aircraft Co.*, No 16-CV-4000, 2017 WL 201373, at *2 (N.D. Ill. Jan. 18, 2017) ("Personal jurisdiction is a claim-specific inquiry, and a plaintiff bringing multiple claims must establish specific jurisdiction for each claim.").

how dissimilar in terms of geography, time, or substance—as evidence of the constitutionally-required minimum contacts."). Plaintiffs cannot "merge" together the Wisconsin facts associated with their other claims, nor can Plaintiffs get by with asserting "that all claims arise from the same general business enterprise." *Hainey v. World AM Communications, Inc.*, 263 F. Supp. 2d 338, 344 (D.R.I. 2003).

Under this claim-specific framework, Wisconsin courts lack jurisdiction over Mills as concerns the CFAA claim. Mills had no Wisconsin contacts pertinent to that claim, let alone contacts sufficient to "purposefully avail[ himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law." *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

The operative allegation behind the CFAA claim is that Mills "deleted, removed and destroyed electronically stored information and data on the cell phone and/or computer tablet." (¶ 56) However, these were mobile devices issued to Mills for his offsite use. (¶ 31) & (Mills Dec. ¶ 19). Bou-Matic does not allege that the cell phone or tablet were housed in Wisconsin. In reality, when Mills arranged for removal of copies from the phone and tablet, neither he nor the devices were in Wisconsin. (Mills Dec. ¶ 19)

Bou-Matic mentions that Mills' phone and tablet "had access to" Bou-Matic's servers, but Bou-Matic never accuses Mills of deleting information from the server. (¶ 55) The mere fact that Mills' phone could access Bou-Matic's server is not a sufficient jurisdictional contact. For example, in *FCStone LLC v. Buckley*, an employer sued ex-workers under the CFAA. During their employment, all of their work-related emails "were housed on the [employer's] servers in Iowa." 864 F. Supp. 2d 816, 820 (S.D. Iowa 2012). The court

dismissed the CFAA claim, holding that the employees' mere sending of emails through a server was too incidental a contact to support personal jurisdiction in Iowa. *Id.*

Bou-Matic never alleges that Mills deleted or tampered with data in Wisconsin or data on the server—only that Mills, while out of state, deleted data stored on his mobile devices. (¶ 56 & Mills Dec. ¶ 19). Even if Bou-Matic had made such allegations about the server, they would be too little to establish jurisdiction in Wisconsin. *See Ray v. Experian*, No. 3:07-CV-1114-R, 2007 WL 4245459, at *3 (N.D. Tex. Nov. 30, 2007) ("[A]ccessing or sending data in North Carolina to or from a database which happens to be headquartered in Texas is not a *purposeful* availment by [the defendant] of the benefits and protections of Texas' laws."). In sum, Mills did nothing in Wisconsin related to the deletion of data on his phone or tablet, and there is no other factual basis for requiring Mills to defend against the CFAA claim in Wisconsin.

### B. Mills is not subject to personal jurisdiction in Wisconsin for the fiduciary duty claims in Count III.

Unlike Bou-Matic and Madison one, neither John P. Kotts nor Kotts Capital, Plaintiffs in Count III, have their headquarters—or any other offices—in Wisconsin. Instead, both Kotts is a citizen of Texas and Kotts Capital is a citizen of Texas and Louisiana. (¶¶ 6, 9, &10)

Mills has no fiduciary duties to either party that would arise under Wisconsin law. Count III alleges nothing that Mills did in Wisconsin to breach any duty to it either Kotts or Kotts Capital. Mills could have expected to be sued in Wisconsin for his alleged legal representation in Texas of a Texas resident and a Texas-based corporation.

Essentially, Plaintiffs seem to believe that because Kotts (an alleged Mills client) owns an interest in a Wisconsin company, then Mills could expect to be sued in Wisconsin over any facts involving Kotts or any Kotts-owned business. Under that theory, every attorney would be subject to jurisdiction for a fiduciary-duty suit in every state where the client happens to own investments. This theory improperly puts the focus on the plaintiffs' forum contacts when the relevant inquiry is the defendant's purposeful availment. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.").

**V.     The Court should dismiss Counts I, II & III of Plaintiffs' complaint for their failure to state a claim upon relief may be granted.**

Even aside from all their jurisdictional flaws, Plaintiffs' claims, in Counts I, II, & III are missing facts sufficient to state plausible causes of action. Rule 12(b)(6) requires pleadings to contain "enough facts to state a claim to relief that is plausible on its face," thereby "nudg[ing][the] claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facts, not legal boilerplate, are needed to sustain a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the facts amount to no "more than the mere possibility of misconduct," dismissal is due. *Id.* at 679.

As described above, the CFAA claim should be dismissed because, among other reasons, Bou-Moutic lacks adequate allegations on damage, loss, and unauthorized use. Plaintiffs' remaining claims are likewise nonviable. Although Plaintiffs collapse them into Counts II & III, the complaint actually contains four fiduciary duty claims:

1. Bou-Matic vs. Mills
2. Madison One vs. Mills
3. Kotts vs. Mills
4. Kotts Capital vs. Mills

Individually as to each claim, each plaintiff must show a plausible case that (1) Mills owed a fiduciary duty to that plaintiff; (2) Mills breached that duty; and (3) the breach of duty caused damage to that plaintiff. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017); *Berner Cheese Corp. v. Krug*, 2008 WI 95, ¶ 40, 312 Wis. 2d 251, 270, 752 N.W.2d 800, 809 .

In Counts II and III, the Plaintiffs for those counts, allege that Mills owed duties to refrain from (1) internecine gossip about Kotts and (2) encouraging Bou-Matic's employees to quit. (¶¶ 74, 87) Neither of those supposed duties fits within any traditional concept of the duty of loyalty. For example, plaintiffs do not allege that Mills tried to poach Bou-Matic's employees for a competing venture. They merely allege that he encouraged them to find jobs elsewhere. Likewise, Plaintiffs identify no authority for their notion that Mills had a fiduciary duty to always speak kindly of Kotts or Kotts Capital.

Even if such legal duties existed, Mills would owe those duties to at most Bou-Matic (not to encourage its employees to leave) and Kotts (to speak nicely). Under no configuration can plaintiffs assemble claims whereby Mills somehow owes a fiduciary duty to Madison One to be nice to Kotts or a duty to Kotts Capital not to encourage Bou-Matic employees to quit. In short, even if all the alleged conduct were illegal, it would violate no duties to Madison One or Kotts Capital.

Plaintiffs dodge the requirement to make a plausible allegation that Mills caused any damages. Merely violating a fiduciary duty is not actionable. Even in the attorney-client context, plaintiffs must prove that the attorney's breach caused compensable harm. The Wisconsin Supreme Court discussed this point in *Krug*.

In that case, Attorney Krug represented a client, Berne,r in a lawsuit against competitors. After the competitors sued Krug as a co-defendant, he started recommending that his clients settle. Even assuming this was contrary to the client's interest and a breach of duty, the court found no fiduciary-duty claim because "Berner presented no evidence to show that the settlement amount was greater than it otherwise would have been absent Krug's alleged breach of fiduciary duty." 2008 WI 95, ¶¶ 58-59. Texas courts follow the same rule. *E.g.*, *Brown v. Green*, 302 S.W.3d 1, 11 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (finding no fiduciary-duty claim where client could not explain how lawyer's disclosure of confidential information caused any specific harm).

Here, the absence of plausible allegations of causation and damages are fatal to all four fiduciary duty claims. Read most generously, the complaint implies that Mills breached his fiduciary duties in effort to (1) get Bou-Matic employees to quit and (2) receive a bonus. However, the complaint never alleges that any employees did quit or that any plaintiffs paid bonuses to Mills in response to his alleged improprieties. Effectively, plaintiffs are asserting claims for ***attempted*** breach of fiduciary duty—a cause of action that exists in neither Wisconsin nor Texas. With no workers having quit Bou-Matic and no bonuses paid to Mills as the result of his alleged misconduct, plaintiff have no plausible claims for breach of fiduciary duties.

## VI.    Conclusion

The Court should grant Defendant's motion to dismiss.

Respectfully submitted,

PINES BACH LLP

_____

Lester A. Pines, SBN 1016543
*Attorneys for Defendant Michael A. Mills*
122 West Washington Ave
Suite 900
Madison, WI 53703
(608) 251-0101 (telephone)
(608) 251-2883 (facsimile)
lpines@pinesbach.com

**AHMAD, ZAVITSANOS, ANAIPAKOS,
ALAVI & MENSING, P.C.**

Steven J. Mitby
Texas Bar No. 24037123 (*admission pending*)
Adam Milasincic
Texas Bar No. 24079001 (*admission pending*)
1221 McKinney Street, Suite 2500
Houston, Texas 77010
Phone: (713) 655-1101
Fax: (713) 655-0062
smitby@azalaw.com
amilasincic@azalaw.com

*Attorneys for Plaintiff Michael. A. Mills*